IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Sherman McCoy,<br><br>        *Plaintiff,*<br><br>  v.<br><br>City of Philadelphia, et al.,<br><br>        *Defendants.* | CIVIL ACTION<br>NO. 21-1458<br>Lead Case |

**Pappert, J.**                                                                                                                                                                **April 29, 2025**

### MEMORANDUM

      Numerous individuals have sued former Philadelphia Homicide Detective Philip Nordo under 42 U.S.C. § 1983 for various violations of their constitutional rights, alleging that Nordo's misconduct tainted their recently invalidated criminal convictions.[1] The Plaintiffs have also sued the City of Philadelphia, alleging municipal liability pursuant to § 1983 and *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). These cases were consolidated for pretrial purposes before this Court, and the parties are currently proceeding with discovery solely on the issue of Plaintiffs' *Monell* claims. All *Monell* discovery is scheduled to end in October, to be followed by summary judgment motions. The Court will implement a schedule governing the Plaintiffs' individual claims, as necessary, following resolution of the *Monell* motions for summary judgment.

---

[1]     The allegations against Nordo are primarily that he coerced witnesses and suspects into giving false statements and confessions, including *via* sexual exploitation. *See Handy v. City of Philadelphia*, No. CV 24-1905, 2024 WL 4309973, at *1–2 (E.D. Pa. Sept. 26, 2024*); Thomas v. City of Philadelphia*, No. CV 24-4914, 2025 WL 607544, at *1–2 (E.D. Pa. Feb. 25, 2025).

Nordo was indicted and convicted in the Philadelphia Court of Common Pleas on a number of charges pertaining to misconduct of the type alleged here. Those convictions are currently on appeal. Given the ongoing criminal proceedings, Nordo has made liberal use of his Fifth Amendment privilege against self-incrimination. He has apparently invoked the privilege in response to, among other things, every paragraph of the complaints in these cases and every question asked of him at his deposition. The Plaintiffs urge that Nordo's invocations of the privilege have been so overbroad as to be "abusive," warranting sanctions. They thus move for entry of a default judgment against Nordo in each of these eleven cases or, alternatively, "an adverse inference effective immediately and to remain throughout the remainder of this litigation." The Court denies the motion because it is underdeveloped and premature.

I

The Plaintiffs seek sanctions against Nordo pursuant to Federal Rule of Civil Procedure 37(b). (Mot. for Sanctions ¶¶ 60–63, ECF No. 95.) That Rule authorizes the Court to sanction a party who "fails to obey an order to provide or permit discovery," including by "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A), (A)(vi). But the Plaintiffs have failed, for at least three reasons, to demonstrate that a default judgment is an appropriate sanction for Nordo's invocation of the privilege against self-incrimination.

First, the Plaintiffs have not identified any "order to provide or permit discovery" that Nordo has violated. They instead assert that sanctions are appropriate now because any order compelling Nordo to provide discovery would be futile, citing *McMullen v. Bay Ship Mgmt.*, 335 F.3d 215, 217 (3d Cir. 2003). (Mot. for Sanctions

¶ 67.) But *McMullen* is inapposite. There, the defendant actually filed a motion to compel, and in responsive briefing and argument the plaintiff "clearly stated" his intention to invoke the Fifth Amendment regardless of the trial court's ruling on the motion. *McMullen*, 335 F.3d at 217. The Court of Appeals held that an order to compel would have been a "meaningless formality" because the plaintiff was clearly not going to follow it and because the "reasons underlying [Rule 37] — active judicial review of the discovery dispute and recognition of the gravity of the issue — had already been satisfied." *Id.* The Plaintiffs here did not previously move to compel any discovery, nor do they ask the Court to compel any specific discovery now. So the Court has had no opportunity to scrutinize particular discovery requests nor any occasion to impart the "gravity" of any discovery issues to Nordo. The Court also cannot assume Nordo would violate an order compelling him to respond to specific discovery requests. There is thus no basis, at least currently, to sanction Nordo under rule 37(b).

Second, the Plaintiffs have not identified any improper invocation of the Fifth Amendment by Nordo that they believe justifies a default judgment.[2] This is fatal to their request because "dismissal of an action or entry of judgment as a sanction for a *valid* invocation of the privilege during discovery is improper." *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 191 (3d Cir. 1994) (emphasis added) (citations omitted). Rather than argue that any particular claims of privilege were improper, the Plaintiffs say a default judgment is warranted because Nordo has utilized a "blanket invocation,"

---

[2] Plaintiffs do identify five questions seeking background information from Nordo that they say he improperly refused to answer. (Mot. for Sanctions ¶ 33.) But the Plaintiffs don't purport to rely on these five questions as the basis for seeking a default; they offer the exchange only as an example of Nordo's alleged "blanket assertions" of the privilege. (*Id.* ¶ 35.)

3

which the Third Circuit held improper in *National Life Ins. Co. v. Hartford Acc. & Indemnity Co.*, 615 F.2d 595 (3d Cir. 1980).

The Plaintiffs' reliance on *National Life* is misplaced. In that case, the deponent "was totally oblivious to the nature or content of the proposed questions" because he "asserted his fifth amendment privilege and left the deposition after summarily supplying only his name and business address." *Id.* at 599. This was improper, the Court of Appeals held, because "the privilege against self-incrimination in a civil proceeding may not be asserted prior to the propounding of the questions." *Id.* at 600. A deponent must invoke the privilege question-by-question, otherwise courts cannot determine the propriety of any particular invocation. *See id.* at 598 (quoting *Hoffman v. United States*, 341 U.S. 479, 486–87 (1951)) (explaining that whether a claim of privilege is proper depends on "the implications of the question," "the setting in which it is asked," "the peculiarities of the case," and "the facts [] in evidence"). The party seeking discovery "retains the right to ask the question," the witness may invoke the privilege in response, and the trial court can "assess the validity of an asserted privilege and avoid its abuse." *Id.*

Here, Nordo has done the minimum *National Life* requires: sit through the deposition and invoke the privilege in response to individual questions. (Mot. for Sanctions ¶ 4.) If the Plaintiffs believe that any of Nordo's invocations were improper, they can make that argument, ask the Court to compel answers, and then seek sanctions if Nordo continues to refuse. The Plaintiffs haven't taken those steps, so their requested sanction is inappropriate.

Third, even if the Plaintiffs had identified improper claims of privilege, they have not adequately explained why a default judgment would be the proper sanction. The Third Circuit Court of Appeals instructs district courts to "favor[] litigation on the merits" and resort to "dismissals with prejudice or a default judgment" as a "last, not first, resort." *McMullen*, 335 F.3d at 217–18 (reversing district court's dismissal of claims by plaintiff who invoked his Fifth Amendment privilege in response to discovery requests). And a district court cannot enter a case-dispositive sanction without first considering the six factors set out in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir. 1984). *See United States v. Brace*, 1 F.4th 137, 143 (3d Cir. 2021) (citing *Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013)). The six factors are:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the [challenged conduct]; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis*, 747 F.2d at 868 (emphasis omitted).[3]

The Plaintiffs have not seriously contended with any of the factors. The closest they come is suggesting they might be prejudiced in the future if Nordo "shift[s] his position and den[ies] Plaintiffs' allegations of fact,"[4] which "would perpetrate the

---

[3] Plaintiffs never cite *Poulis*. They instead cite the four factors set out in *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133 (3d Cir. 2000), but those factors govern "whether the exclusion of evidence is an appropriate sanction for failure to comply with discovery duties," not whether a case-dispositive sanction is appropriate. *Id.* at 148.

[4] The Plaintiffs also complain generally about Nordo's simultaneous invocation of privilege and denial of the allegations against him. *See* (Pl.'s Reply 1–5, ECF No. 97.) But there is nothing inherently problematic about properly invoking the privilege and simultaneously denying an opponent's allegations. *See, e.g., Graystone Nash*, 25 F.3d at 192 (quoting with approval a district court's observation that a defendant who claims privilege "may be able to ... rebut his opponent's case without his own testimony") (cleaned up); *Adkins v. Sogliuzzo*, 625 F. App'x 565, 572 (3d Cir. 2015); *Brown v. Certain Underwriters at Lloyds, London*, 777 F. App'x 34, 35 n.1 (3d Cir. 2019).

5

utmost prejudice on Plaintiffs." (Mot. for Sanctions ¶ 10.) If Nordo does later reverse course and waive his privilege, the Court can deal with the implications at the appropriate time, *see Graystone Nash*, 25 F.3d at 190 (acknowledging the "potential for exploitation" of the privilege), but some possible future prejudice does not support entry of a default judgment now.

And the two cases the Plaintiffs do cite in support of their position don't help them. They first quote *dicta* from the Supreme Court's opinion in *Mitchell v. United States*, 526 U.S. 314 (1999) that a civil litigant who invokes his Fifth Amendment privilege risks "suffering an adverse inference or even a default." *Id.* at 328. But the Court there said nothing about what, if any, circumstances justify default judgment as a sanction. They also cite *Grzegorek v. All Credit Fin., Inc.*, No. 2:08-CV-771, 2009 WL 3241861 (W.D. Pa. Oct. 2, 2009), which did not involve entry of a default judgment as a sanction either. The court there *refused to set aside* a default judgment it had previously entered based on the defendants' failure to participate in the case. *Id.* at *1. The fact that one defendant had previously taken the Fifth was relevant only because it allowed the court to draw an adverse inference against the defendants and conclude that they had no defense to the lawsuit that would merit setting aside the default. *See id. a*t *2–3.

II

In the alternative to a default judgment, the Plaintiffs seek "sanctions in the form of an adverse inference." (Mot. for Sanctions ¶ 11.)⁵ The Fifth Amendment does

---

⁵   It's doubtful that adverse inferences are really a "sanction" absent *improper* invocation of the Fifth Amendment privilege (which, again, the Plaintiffs haven't shown here). For one, the Court of Appeals in *Graystone Nash* suggested that "[t]he procedural rules . . . provide no basis for inflicting sanctions when there is a valid invocation of the Fifth Amendment." 25 F.3d at 191; *but see*

6

not prohibit courts from "draw[ing] 'adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.'" *Graystone Nash*, 25 F.3d at 191 (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)). But adverse inferences against a party based upon his claim of privilege must be supported by some independent evidence. *See United States v. Stelmokas*, 100 F.3d 302, 311 (3d Cir. 1996); *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 912 (9th Cir. 2008). And "[b]ecause the privilege is constitutionally based, the detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side." *Graystone Nash*, 25 F.3d at 192. So before a Court may draw an adverse inference, it "must carefully balance the interests of the party claiming protection against self-incrimination and the adversary's entitlement to equitable treatment." *Id.*

The Plaintiffs' request here is deficient for two reasons. First, their motion doesn't include any evidence against Nordo to independently support any inference against him. Second, and more fundamentally, the Plaintiffs have not identified any particular inference they'd like the Court to draw (or instruct a potential jury to draw). Their specific ask is for "an adverse inference effective immediately and to remain throughout the remainder of this litigation." (Mot. for Sanctions ¶ 37.) But because the Court can only draw (or instruct a jury to draw) inferences it concludes are necessary to prevent unfair and unnecessary prejudice, the Court must evaluate the appropriateness

---

*McMullen*, 335 F.3d at 216, 218 (referring to the consequences of properly invoking the Fifth Amendment privilege as "sanctions"). For another, adverse inferences from rightful silence are meant only "to prevent unfair and unnecessary prejudice," not to punish or deter use of the Fifth Amendment right. *Graystone Nash*, 25 F.3d at 192. Sanctions, on the other hand, *are* meant to deter future instances of the sanctioned conduct. *See Newton v. A.C. & S., Inc.*, 918 F.2d 1121, 1126 (3d Cir. 1990); *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 99 (D.N.J. 2006).

7

of any potential inference on an individualized basis. The Plaintiffs might be prejudiced by Nordo's refusal to answer some questions and not by others, yet they would have the Court rule (before discovery on the claims against Nordo even begins) that all silence by Nordo warrants equally an inference in their favor. Such a ruling would be inappropriate at this juncture. *Cf. Hartford Steam Boiler Inspection & Ins. Co. v. Int'l Glass Prods., LLC*, No. 2:08CV1564, 2014 WL 109078, at *5 (W.D. Pa. Jan. 10, 2014) (deferring decision about appropriate remedial measures for defendant's claims of privilege until "summary judgment and/or final pretrial development," where the issues would be "more concrete and particularized").

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.